IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| **MUZZY PRODUCTS CORP.**, a Georgia corporation,<br><br>Plaintiff,<br><br>v.<br><br>**PRIMOS, INC.**, a Mississippi corporation,<br><br>Defendant. | Civil Action No. 4:05-CV-182<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL** |

I.
INTRODUCTION

Plaintiff Muzzy Products Corp. ("Muzzy") respectfully submits this Memorandum in Opposition to Defendant's Motion to Disqualify Plaintiff's Counsel. Defendant's motion seeks to mischaracterize an innocent communication to gain a tactical advantage. It is undisputed the allegedly improper communication between Muzzy's patent counsel Gerald Helget and Defendant's President Will Primos related primarily to the Arnold S. Leonard Cancer Research Fund – a charitable organization both men are actively involved in. The subject of the litigation was raised by Mr. Primos and was insignificant and incidental. The true motive behind Defendant's motion is best illustrated by the fact Defendant does not even attempt to contend the communication involved the disclosure of any

confidential, privileged, work product, or other case sensitive information which will prejudice it in any way. On the contrary, disqualification of Muzzy's patent counsel Gerald Helget and/or the firm of Briggs and Morgan would severely prejudice Muzzy. While Muzzy strongly disputes any violation of Rule of Professional Conduct 4.2 occurred, disqualification is not warranted in the present case *even if Defendant's allegations are accepted as true.*[1]  Accordingly, Defendant's motion should be denied.

## II.
## FACTS

**A.   Background**

This is a patent infringement lawsuit. Muzzy is the owner of United States Patent No. 6,780,079 covering an "Elevated Game Call With Attachment Feature." (Patent No. 6,780, 079) (Attached as Exhibit A.) Muzzy's longstanding patent counsel, Gerald Helget, was one of the prosecuting attorneys involved in obtaining the subject patent. (Declaration of Gerald Helget, ¶ 4.) (Attached as Exhibit B.) Mr. Helget has over 22 years experience prosecuting patents and has significant

---

[1] Assessing the merits of the alleged ethical violation and making factual findings would require or necessitate a complete evidentiary hearing. *Meat Price Investigators Assoc. v. Spencer Foods, Inc.*, 572, F.2d 163, 164 (8th Cir. 1978) (district court held two evidentiary hearings on motion to disqualify).

experience and expertise in patents relating to the outdoor and wildlife industry. (*Id.* at ¶ 1.)

After conducting a thorough analysis and evaluation of Defendant's accused "THE FREAK" brand game call, Mr. Helget concluded the product infringed Muzzy's patent. (Declaration of Michele Eichler, ¶ 4) (Attached as Exhibit C.) Counsel for both parties engaged in protracted discussions regarding the merits of Muzzy's infringement claims, including detailed discussions concerning whether or not the accused product met the "unencumbered path" limitation contained in the subject patent. (Letters Dated Dec. 21, 2004, Jan. 20, 2005 and Mar. 7, 2005) (Attached as Exhibit D.)

The parties were unable to resolve their dispute and Muzzy commenced litigation in August 2005. [Doc. No. 1] Contrary to the assertions contained in Defendant's motion, this litigation is not in its "infancy." Briggs and Morgan counsel John Lunseth, Michael Lafeber, and Gerald Helget have been admitted Pro Hac Vice. [Docket Nos. 6,7,8.] A Joint Preliminary Report was prepared and submitted by the parties. [Docket No. 20.] The parties have exchanged Rule 26(a) Initial Disclosures. [Docket No. 18.] Both parties have served written discovery requests. Muzzy has responded to Defendant's Interrogatories, Document Requests and Requests for Admission. Muzzy has also submitted its Infringement

Contentions pursuant to Local Patent Rule 4.1. The parties are presently scheduling depositions of key witnesses and preparing for upcoming *Markman* briefing required under the Local Patent Rules.

The parties continued to engage in a dialogue regarding the merits of their respective infringement analysis subsequent to the commencement of litigation. (Letters Dated Oct. 4, 2005, Jan. 31, 2006 and Feb. 3, 2006) (Attached as Exhibit E.) One of the primary and openly discussed issues in these communications was the presence or absence of the "unencumbered path" claim limitation in the accused product. (*Id.*)

**B.     Communication Between Mr. Helget and Mr. Primos**

The 2006 SHOT Show was held February 9-12 at the Las Vegas Convention Center. SHOT Show website, http://www.shotshow.org. The SHOT Show is touted as the world's largest showcase of firearms, hunting and outdoor products. Mr. Helget routinely attends the SHOT Show due to his involvement and expertise in the industry. (Helget Decl., ¶ 2.) Mr. Helget attended the recent SHOT Show in part to contact past donors to the Arnold S. Leonard Cancer Research Fund (ASL). (*Id.* at ¶ 2.) Dr. Leonard is a thoracic and pediatric surgeon involved in immunotherapy cancer research at the University of Minnesota. *See* http://www.pectusdeformity.com/LeonardAddress.html. He is also an avid

bowhunter and outdoorsman. *See* http://www.davewatson.com/media/asl_brochure.pdf. For the past 14 years, ASL has sponsored an annual "Hunt for a Cure" event in Minneapolis, Minnesota. *Id.*

Mr. Helget had been provided with a list of donors from ASL Fund Chairman Rob Evans and was visiting donors present at the SHOT show to thank them for their donations, remind them additional donations would be appreciated, and hand out brochures for ASL's 14th Annual "Hunt for a Cure" charity event on March 14, 2006 in Minneapolis. (Helget Decl., ¶ 2.) Mr. Primos is a past donor and admits he shares Mr. Helget's interest in Dr. Leonard's cancer research. (Declaration of Will Primos, ¶11.) Mr. Primos concedes he recognized Mr. Helget at the Show, approached him and initiated communications. (Primos Decl., ¶ 4.)

It is undisputed Mr. Helget and Mr. Primos discussed numerous matters completely unrelated to the pending litigation. (Helget Decl., ¶ 5, 12; Primos Decl., ¶ 11.) They talked about the ASL "Baldy Award" hair cut in Atlanta and the fact it raised approximately $67,000 for the charity. (Helget Decl., ¶ 5; Primos Decl., ¶ 11.) Mr. Helget asked Mr. Primos if he would be attending the upcoming "Hunt for a Cure" event in Minneapolis and whether he needed any brochures. (Helget Decl., ¶ 5.) Mr. Primos indicated he was so busy with video productions, new products and family commitments he would be unable to attend. (Helget

Decl., ¶ 5.)  Mr. Helget discussed a new light product he is bringing to market. (Helget Decl., ¶ 12; Primos Decl., ¶ 11.)  Mr. Primos indicated he thought Knight & Hale had a similar product which Mr. Helget should check out.  (*Id.*)  They also discussed mutual acquaintances.  (Helget Decl., ¶ 12; Primos Decl., ¶ 11.)

Contrary to the allegations contained in Defendant's motion, Mr. Helget did not engage in a discussion with Mr. Primos regarding the substantive merits of the case.  (Helget Decl., ¶¶ 5-14.)  Rather, Mr. Primos volunteered the unsolicited statement that Primos did not infringe the Muzzy patent because the accused product has "no unencumbered path."  (*Id.* at ¶ 6.)  This statement by Mr. Primos did not disclose anything of a confidential or privileged nature.  Rather, this issue has been openly debated by both parties in great detail.  (Exs. D and E.)  Contrary to Defendant's allegations, Mr. Helget responded to Mr. Primos' statement concerning the "unencumbered path" issue by advising Mr. Primos he was one of Muzzy's lawyers and that they could not discuss the pending lawsuit.  (Helget Decl., ¶ 6.)  Mr. Helget did remark that the attorneys for the respective parties should discuss settlement or mediation.  (Helget Decl., ¶ 14.)

The gentlemen shook hands, and Mr. Helget proceeded to another booth. (*Id.* at ¶ 15.)  Mr. Helget took no notes concerning this brief encounter.  (*Id.* at ¶ 5.)

Lastly, Mr. Helget did not in any way instruct Mr. Primos not to tell his lawyers about their brief encounter, as alleged by Defendant.  (*Id.* at ¶ 11.)

## III.
## ANALYSIS

A.     **Defendant's Request for Disqualification Lacks Merit**

Disqualification based on an alleged ethical violation is a drastic penalty to be utilized with great caution. *MMR/Wallace Power & Industrial, Inc. v. Thames Associates*, 764 F.Supp. 712, 718 (D.Conn. 1991) ("Where the proposed sanction is the disqualification of counsel, the court must be especially cautious, notwithstanding any misgivings it may have regarding an attorney's ethical conduct, both because of the immediate effect disqualification has on a client by separating him from his counsel of choice, and because such motions are often interposed for tactical reasons."); *see also Schlumberger Technologies, Inc. v. Wiley*, 113 F.3d 1553, 1562 (11th Cir. 1997) (the Eleventh Circuit cited multiple cases that note the great weight that must be given to attorney disqualification decisions); *Georgia Baptist Health Care System, Inc. v. Hanafi*, 559 S.E.2d 746, 748 (Ga. Ct. App. 2002) ("Disqualification not only curtails a client's right to counsel of choice, but results in expense and delay that are costly both to the client and to the administration of justice."); *Nuri v. PRC, Inc.*, 5 F.Supp.2d 1299, 1304

(M.D.Ala. 1998) ("[V]iolations come in varying degrees of severity, but disqualification is always a drastic measure.").

Due to the drastic nature of disqualification, and the inherent potential for abuse by litigants, a moving party is held to a high standard of proof. *Nuri,* 5 F.Supp.2d at 1304 ("[T]he moving party is held to a high standard of establishing the basis of the motion, and the need for disqualification."). The American Bar Association has likewise created a high standard of proof required for lawyer disciplinary proceedings. Charges of misconduct "shall be established by clear and convincing evidence." ABA Model Rules for Lawyer Disciplinary Enforcement Rule 18(c) (1993); *Schlumberger*, 113 F.3d at 1562.

This Court has recognized it must carefully weigh and compare any potential harm caused by the alleged unethical conduct against the prejudice which would result from disqualification. *In re Polypropylene Carpet Antitrust Litigation*, 181 F.R.D. 680, 697 (N.D.Ga. 1998) In *Polypropylene*, this Court carefully weighed the harm of disqualification and determined plaintiff would suffer a "severe hardship" if forced to find new counsel. On the other hand, the court found a minimal risk of public outcry or subversion of the legal process resulting from the alleged improper conduct. *Id.* at 699*; see also Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F.Supp. 1080, 1083 (S.D.N.Y. 1989) ("It follows that a violation

of professional ethics rules does not alone trigger disqualification; rather, a trial judge should primarily assess the possibility of prejudice at trial that might result from the attorney's unethical act."); *Meat Price Investigators Assoc. v. Spencer Foods, Inc.*, 572 F.2d 163 (even if there is a possibility there was an ethical violation, there must be proper evidence of prejudice to disqualify counsel).

1.  **Rule of Professional Conduct 4.2**

Rule 4.2 does not prohibit all communications between a represented party and counsel. Rather, it only prohibits communication "*about the subject of the representation.*" ABA Model Rule of Professional Conduct 4.2; *See* ABA Model Rule of Professional Conduct, 4.2 cmt. 4. ("This Rule does not prohibit communication with a represented person, or an employee or agent of such a person, concerning matters outside the representation."); *Miller v. Material Sci. Corp.*, 986 F.Supp. 1104, 1106 (N.D.Ill. 1997) (no violation of Rule 4.2 when plaintiff's counsel spoke with defendant about accounting irregularities during litigation in a securities fraud action).

In the present case, it is undisputed the alleged communication primarily involved a worthwhile subject completely unrelated to the litigation – the Arnold S. Leonard Cancer Research Fund. It is also undisputed absolutely no confidential, privileged, or case sensitive information was disclosed or revealed as part of the

communication. The only communication relating to substantive issues in the litigation was the unsolicited and incidental statement by Mr. Primos that the accused game call does not provide an "unencumbered path" for sound to escape, an issue upon which both sides have openly and freely disclosed their respective positions on multiple occasions.

The sole relevant factual disputes created by Mr. Primos' allegations are: 1) whether Mr. Helget advised Mr. Primos they were not allowed to discuss substantive issues; 2) whether Mr. Helget asked Mr. Primos not to advise his lawyers they had communicated; and 3) the specific content of references to alternative dispute resolution. While regrettably highlighting the practical wisdom of avoiding even allowable communications, such "he said, she said" disputes do not meet the level of proof required to establish an ethical violation.

2. **Weighing of the Harms**

    a. **Prejudice to Defendant**

Resolution of the factual disputes is not necessary or warranted in the present case due to the complete absence of any alleged prejudice to Defendant. Defendant has not alleged Muzzy obtained any confidential, privileged or previously undisclosed information as a result of the brief encounter between Mr. Helget and Mr. Primos. Defendant does not contend Muzzy obtained *any* tactical

advantage as a result of the limited exchange. Rather, Defendant's sole reference to "prejudice" in its memorandum is a perplexing assertion that the differing versions of events "directly challenges the credibility of Mr. Primos" which "results in a serious prejudice to Primos, whose conduct is at issue in this suit." (Defendant's Memorandum, p. 4.) A factual dispute manufactured by Defendant on matters unrelated to the issues to be decided at trial results in no prejudice to Defendant.

A cursory review of the case law reveals the heightened level and nature of prejudice required to justify disqualification. The Eighth Circuit upheld the denial of a disqualification motion despite the fact plaintiff's counsel conducted an ex parte *interrogation* of a represented party because the potential prejudice to plaintiff far outweighed any alleged prejudice to the moving party. *Meat Price Investigators Assoc. v. Spencer Foods, Inc.*, 572 F.2d 163

*Nuri* involved repeated contacts between plaintiff's counsel and defendant. In determining whether or not counsel should be disqualified, the court considered the fact counsel did not benefit at all from the contacts and there was no evidence of prejudice suffered by the defendant. *Nuri,* 5 F.Supp.2d at 1304. The court acknowledged the defendant's allegations created an appearance of impropriety, but held defendant to a higher standard of proving harm. *Id.*; *see also Billings v.*

*Martinez*, 821 So.2d 1161, 1162 (Fla. Dist. Ct. App. 2002) (the court held that there was no violation of the ethical rule when no confidential information was communicated and there was no prejudice to the plaintiff); *Faison v. Thornton*, 863 F.Supp. 1204, 1216-17 (D.Nev. 1993) (court said that disqualification is only used in extreme situations, such as the five hour conversation between plaintiffs' counsel and defendant that took place in the case); *Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F.Supp. 1080, 1083 (S.D.N.Y. 1989) (disqualification warranted due to meeting lasting over an hour and a half, involving discussion of interpretation, analysis and strategy.)

The present case does not involve an interrogation, lengthy communications or multiple contacts. Rather, it involves a brief encounter for a charitable cause. Defendant has not even attempted to claim Muzzy obtained any tactical advantage or benefit as a result of the encounter. Accordingly, the request for disqualification lacks merit.

      b.    **Prejudice to Muzzy**

Muzzy would suffer a severe hardship if Gerald Helget or Briggs and Morgan were disqualified. Muzzy would be stripped of its right to select the lawyer of its choosing. Muzzy selected Mr. Helget due to his longstanding relationship with the company, his prior involvement with and knowledge of the

subject patent, as well as his experience and expertise in the wildlife and outdoor industry.

Mr. Helget and Briggs and Morgan have already invested considerable time and effort, for which Muzzy has incurred significant expense, evaluating the subject patent, the accused product and all relevant infringement and invalidity issues. Moreover, the subject litigation is well into the discovery phase, with both parties having served written discovery requests. Muzzy has already responded to Defendant's written discovery requests and has already served its Patent Local Rule 4.1 Infringement Contentions. As counsel for Muzzy, Gerald Helget and Briggs and Morgan have developed and are continuing to gather support for Muzzy's claim construction arguments in preparation for the upcoming *Markman* briefing. Forcing Muzzy to find new counsel at this stage would come at significant expense, as well as significant loss of expertise and knowledge of the relevant subject area. It would also unjustly deprive Muzzy of its right to select counsel of its choosing to represent Muzzy in the litigation.

Moreover, allowing counsel to continue in their representation of Muzzy would not do any damage to "the public's confidence in the legal system." As in *In re Polypropylene Carpet,* Mr. Helget's alleged improper communications would not cause any public outcry. On the contrary, allowing a litigant to obtain

disqualification based solely on unsubstantiated and controverted allegations, and in the absence of any alleged prejudice, would raise serious public policy issues and concerns.

## IV. CONCLUSION

Primos' motion to disqualify lacks merit and appears to be nothing more than an attempt to harass Muzzy and mischaracterize an innocent meeting to gain a tactical advantage.  While Muzzy strongly disputes Primos' characterization of the meeting, even accepting Primos' version of events as true, there is no resulting prejudice to Defendant.  Moreover, disqualification of Gerald Helget and/or Briggs and Morgan would result in a severe hardship to Muzzy.  Accordingly, Muzzy respectfully requests that the motion be denied in its entirety.  In the alternative, Muzzy requests a complete evidentiary hearing on the alleged improper conduct.

This 10th day of March, 2006.

          **BRIGGS AND MORGAN, P.A.**

          Michael M. Lafeber (MN Bar #242871)
          2200 IDS Center
          80 South Eighth Street
          Minneapolis, Minnesota 55402
          Telephone:  (612) 977-8400
          Facsimile:   (612) 977-8650


          **BRINSON, ASKEW, BERRY, SEIGLER, RICHARDSON & DAVIS, LLP**

          By: <u>/s/ Robert M. Brinson</u>
              Robert M. Brinson
              615 West First Street
              Omberg House
              Rome, Georgia 30162-5513
              Telephone:  (706) 291-8853
              Facsimile:   (706) 234-2574

          **ATTORNEYS FOR PLAINTIFF**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

| | |
|---|---|
| **MUZZY PRODUCTS CORP.**, a Georgia corporation,<br><br>Plaintiff,<br><br>v.<br><br>**PRIMOS, INC.**, a Mississippi corporation,<br><br>Defendant. | Civil Action No. 4:05-CV-182<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL** |

## CERTIFICATE OF SERVICE

This is to certify that I have this day electronically filed the **Plaintiff's Memorandum In Opposition To Defendant's Motion To Disqualify Plaintiff's Counsel** with the Clerk of Court using the CM/EDF system which will automatically send notification of such filing to the following parties at interest:

Robert H. Smalley, III
McCamy, Phillips, Tuggle & Fordham, LLC
P.O. Box 1105
Dalton, GA  30722-1105

L. Grant Foster (Pro Hack Vice)
Brett L. Foster  (Pro Hack Vice)
Mark A. Miller (Pro Hack Vice)
Holland & Hart LLP
60 E. South Temple, Suite 2000
Salt Lake City, UT  84111-1031

This 10th day of March, 2006.

BRINSON, ASKEW, BERRY, SEIGLER, RICHARDSON & DAVIS, LLP

<u>/s/ Robert M. Brinson</u>
Robert M. Brinson, Esq.
615 West First Street
Omberg House
Rome, Georgia 30162-5513
Telephone:  (706) 291-8853
Facsimile:   (706) 234-2574